[Cite as *Stag Indus. Holdings, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2024-Ohio-2814.]

**COURT OF APPEALS OF OHIO**
**EIGHTH APPELLATE DISTRICT**
**COUNTY OF OHIO**

STAG INDUSTRIAL HOLDINGS, LLC, :

      Appellant, : No. 113500

      v. :

CUYAHOGA COUNTY BOARD OF
REVISION, ET AL., :

      Appellees. :

---

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Administrative Appeal from the Board of Tax Appeals
Case No. 2023-473

---

***Appearances:***

Taft Stettinius & Hollister LLP and Stephen M. Griffith,
Jr., *for appellant.*

Brindza McIntyre & Seed LLP, Robert A. Brindza, Daniel
McIntyre, David H. Seed, and David A. Rose, *for appellee*
Strongsville City School District Board of Education.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant, Stag Industrial Holdings, LLC ("Stag"), appeals the

decision of the Board of Tax Appeals ("BTA") regarding the valuation for tax year

2021 of its real property known as parcel number 393-01-018, which is located on

Foltz Industrial Parkway in Strongsville, Ohio ("the property"). Upon review of the entire record and relevant case law, we reverse the BTA's decision and remand with instructions that for tax year 2021 the property's valuation be modified to reflect a total valuation of $19,500,000 with the land value set at $714,600, as originally determined by the Cuyahoga County Fiscal Officer ("the fiscal officer"), and the building value set at $18,785,400, as supported by evidence of improvements and increased market value.

{¶ 2} In March 2022, the Board of Education for the Strongsville City School District ("the BOE") filed a valuation complaint seeking an increase in the value of the property for tax year 2021. The fiscal officer had valued the property for tax year 2021 at a total of $11,734,200, which consisted of a land value of $714,600 and a building value of $11,019,600. However, the property had been improved with a commercial warehouse building in 2020, consisting of 179,577 square feet, and the property was sold to Stag for $19,500,000 in August 2021. The BOE sought to have the property's value increased to the sale price, which was an increase of $7,765,800. Stag filed a countercomplaint claiming the property's value had not changed.

{¶ 3} A hearing was held before the Cuyahoga County Board of Revision ("BOR"). In support of its position, the BOE submitted a copy of the limited warranty deed, other documents as to the sale and the sale price, and photographs that included the newly constructed warehouse building. The limited warranty deed was stamped by the fiscal officer on August 30, 2021, with information showing the sale amount of $19,500,000 and a land value of $714,600, which was unchanged.

There was no dispute as to the recency or arm's-length nature of the sale. Counsel for the BOE requested an increase in the building value and indicated that the BOE was not asking for a change to the land value. Counsel for Stag conceded the purchase price but argued the land value should remain the same because the BOE had introduced no evidence of land value.

{¶ 4} As reflected in the oral hearing journal summary, the BOR found that the property's "2021 purchase price is the best indication of value" and granted "a value of $19,500,000 for the subject property for tax year 2021." However, in allocating that amount, the BOR increased the land value to $1,187,500 and the building value to $18,312,500.[1] The BOR issued a decision notice on March 28, 2023. The BOR offered no explanation for the increase in the land value.

{¶ 5} Stag appealed the BOR's decision to the BTA. Stag conceded the market value of the property for tax year 2021 was $19,500,000, but it challenged the BOR's increase in the land value in its allocation. Stag submitted a merit brief in which it argued that the BTA could not lawfully affirm the BOR's determination of land value because it was not supported by any evidence. Stag requested that the BTA order the land value be set to the fiscal officer's valuation of $714,600 and the improvement or building value be increased to $18,785,400. No hearing was requested by the parties.

---

[1] Not only was the BOR's determination of land value above the $714,600 set by the fiscal officer for tax year 2021, but it also appears that the property was reassessed in 2022 with a land value of only $824,600.

{¶ 6} The BTA issued a decision on December 1, 2023, in which it found the BOE had presented evidence of a facially valid sale, and the BTA ordered the property valued at $19,500,000 for tax year 2021. In its decision, the BTA observed that Stag had conceded the sale was valid and only opposed the increase in the land value. The BTA indicated that Stag was relying upon statements of counsel as opposed to evidence to support its argument and rejected Stag's argument regarding land value and the BOE's failure to present evidence to support the allocation between land and improvements. Even though Stag was not challenging the sale's validity or the purchase price, the BTA found that Stag did not present any evidence and failed to meet its burden to rebut the sale's presumptive validity. Having rejected Stag's arguments, the BTA did not alter the BOR's allocation of the property's total value between land and improvements for tax year 2021. Stag timely appealed the BTA's decision to this court.

{¶ 7} Under its sole assignment of error, Stag claims the BTA erred by affirming the BOR's determination of land value when the record contains no evidence to support a change from the land value of $714,600 set by the fiscal officer. Stag seeks a reallocation of the property's total value and argues that the appropriate disposition would have been to reinstate the fiscal officer's original determination of land value for tax year 2021 and to increase the improvement value. We agree.

{¶ 8} Initially, it is important to recognize that in this case, Stag does not dispute the property's total valuation for tax year 2021 of $19,500,000, which amount was reflective of a recent arm's-length sale of the property for taxation

purposes. *See* R.C. 5713.03. As such, this is not a case in which rebuttal evidence was required to refute the total value assigned to the property by the BOR.[2] Rather, in this case the challenge relates to the allocation of the total property value between land and improvement. More specifically, with regard to that allocation, Stag claims there is an absence of any evidence in the record to support the BOR's increase in land value or from which the BTA could independently determine a land value other than the value set by the fiscal officer. The BOE, which only sought an increase in the building or improvement value, does not dispute that there was never any evidence presented as to land value.

{¶ 9} We also recognize that this case is distinguishable from the circumstances of *Arbors E. RE, LLC v. Franklin Cty. Bd. of Revision*, 2018-Ohio-1611, which is cited in the BTA's decision. That case involved the sale of a nursing home, which had a business value separable from a real-estate value, and there was a dispute over to what extent the sale price ought to have been allocated to assets other than real estate. *Id.* at ¶ 1, 21. The party advocating for the reduction from the sale price had presented an appraisal report to the board of revision, but that evidence had not been transmitted to the BTA. *Id.* at ¶ 18. Because the BTA neglected to obtain a complete record and did not consult all the evidence that had

---

[2] Generally, the burden of proof is on the appellant before the BTA to prove its right to an increase in or a reduction from the property value determined by a board of revision that was supported by evidence of a recent arm's-length sale as the best evidence of true value. *See Lakota Local School Dist. Bd. of Edn. v. Butler Cty. Bd. of Revision*, 2006-Ohio-1059, ¶ 6-7, 25. Here, Stag does not contest the sale price was a result of a recent arm's-length transaction or challenge the property's total valuation for tax year 2021.

been submitted to the board of revision, the matter was remanded to the BTA. *Id.* at ¶ 1, 17-18. That is not the situation presented in this matter, wherein the total property value is conceded, the disputed allocation is between land and improvements, and there was never any evidence presented as to the land value.

{¶ 10} There is little authority directly on point in this matter. However, contrary to the decision of the BTA, we find the Supreme Court of Ohio's decisions in *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 2008-Ohio-2454, and *Bd. of Edn. of the Columbus City School Dist. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564 (2001), to be instructive in this case.

{¶ 11} In reviewing the decision of the BTA, we must determine whether the decision is "'reasonable and lawful.'" *Polaris* at ¶ 18, quoting *Shiloh Automotive, Inc. v. Levin*, 2008-Ohio-68, ¶ 15; *see also HCP EMOH, L.L.C. v. Washington Cty. Bd. of Revision*, 2018-Ohio-4750, ¶ 11, citing *Satullo v. Wilkins*, 2006-Ohio-5856, ¶ 14; R.C. 5717.04. "Under this standard, we will affirm the BTA's determinations of fact if the record contains reliable and probative evidence to support the BTA's findings" but "will reverse if the record does not support, or if it contradicts, the BTA's findings." *Id.*, citing *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 2007-Ohio-1948, ¶ 14, 27-28. Moreover, "[w]e review de novo the BTA's resolution of legal issues but defer to the BTA's findings concerning the weight of the evidence *if there is record support for them*." (Emphasis added.) *HCP EMOH* at ¶ 11, citing *Lunn v. Lorain Cty. Bd. of Revision*, 2016-Ohio-8075, ¶ 13. In *Polaris*, the Supreme Court reversed the BTA's determination of land value because

the record contained no support for, and in fact contradicted, the BTA's finding for land value. *Id.* at ¶ 16-18.[3]

{¶ 12} In this case, there is no evidence in the record to support the BOR's decision to increase the land value from the value set by the fiscal officer, presumably performing the duties of a county auditor. As the Supreme Court recognized in *Polaris*, "[t]he allocation of value between land and improvements does not constitute an arbitrary exercise; it relates to the basic method by which county auditors determine value." *Id.* at ¶ 17. In this regard, "[t]he Tax Commissioner's administrative rules direct the county auditors to arrive at total value by separately valuing the land and improvements" and "[t]he commissioner also prescribes two different rules for land valuation and the valuation of improvements." *Id.*, citing Ohio Adm.Code 5703-25-07(B), 5703-25-07(C), 5703-25-11, and 5703-25-12.

{¶ 13} Thus, even if the burden was on Stag in challenging the BOR's determination of land value to the BTA, Stag was free to rely upon the fiscal officer's valuation under the circumstances presented. "If the BOR had retained the auditor's original assessed valuation, the BTA would have been justified in adopting that value." *Bd. of Edn. of the Columbus City School Dist.*, 90 Ohio St.3d 564 at 566-567,

---

[3] Unlike the *Polaris* case, we find no cross-appeal was required by the BOE to have the building value adjusted because Stag sought to adjust both the land value and the building value in this matter. *See id.* at ¶ 3, 10-13 (finding a cross-appeal was required if the Board of Education of the Olentangy Local Schools wanted to challenge whether the BTA assigned too little value to improvements when the property owner only sought a reduction equal to the amount by which the land value was overstated).

citing *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193, 195 (1998); *see also Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 2017-Ohio-8843, ¶ 20, 24.  However, "[h]ere the value set by the BOR was its own value, different from that assessed by the auditor." *Id*. at 567. The BTA was required to review the transcript and make an independent judgment based on its own weighing of the evidence. *See id*., citing *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15 (1996); *see also* 5717.03(B).  Yet, there is no evidence or other information in the transcript to explain the action taken by the BOR and "[b]y affirming the BOR's valuation, the BTA affirmed a valuation that was not supported by any evidence." *Id*.  Under these circumstances, we find the BTA erred by rejecting Stag's challenge.  *See id*. at 565-567 (finding the BTA erred in adopting a value set by a board of revision that was different from that assessed by the auditor when there was no evidence to support the board of revision's valuation).  As stated by the Supreme Court, "[w]e cannot affirm a determination of value by the BTA that is not supported by sufficient probative evidence." *Id*. at 567.  "By agreeing to waive an evidentiary hearing before the BTA, both parties agreed to have the case decided based on the record as it then existed." *Id*. at ¶ 566.

{¶ 14} The record herein demonstrates that the land value of $714,600 as set by the fiscal officer was neither contested nor refuted by the BOE.  Rather, the BOE solely sought an increase in the building or improvement value and presented evidence of the then recent sale of the property as improved with the commercial

warehouse building that was constructed in 2020. Despite the lack of evidence to support an increase in the land valuation, the BOR increased the land value in its allocation of the property's total value between land and improvements, and the BTA affirmed the BOR's allocation without sufficient probative evidence from which it could independently determine a land value other than the value set by the fiscal officer. Because we find that the BTA's decision in this regard is unreasonable and unlawful, it must be reversed.[4]

{¶ 15} Accordingly, Stag's sole assignment of error is sustained. We reverse the BTA's decision and remand with instructions that for tax year 2021 the property's valuation shall be modified to reflect a total valuation of $19,500,000 with the land value set at $714,600, as originally determined by the fiscal officer, and the building value set at $18,785,400, as supported by evidence of improvements and increased market value.[5]

{¶ 16} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Board of Tax Appeals to carry this judgment into execution.

---

[4] We find the authority cited by the BOE is distinguishable from this matter and are not otherwise persuaded by the arguments presented by the BOE.

[5] In accordance with R.C. 5717.04, we may reverse, vacate, or modify a decision of the BTA.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR